UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REITER CONSULTING SERVICES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> **SANDRA HILDENBRAND**, in her capacity as personal representative of the Estate of Jack Dallas Hildenbrand, *and* **POTOMAC SOLUTIONS LLC**, <br><br> *Defendants.* | Case No. 1:23-cv-2805-RCL |

## MEMORANDUM OPINION

Before the Court are two motions: Plaintiff Reiter Consulting Services' Motion for Leave to Amend and Defendant Sandra Hildenbrand's Motion for Summary Judgment, brought in her putative capacity as personal representative of her deceased husband, Jack Dallas Hildenbrand. Ultimately, the disposition of both motions turns on the lack of diligence of the plaintiff. Namely, the plaintiff's motion for leave to amend *and* the plaintiff's opposition to summary judgment were filed well past clearly set deadlines, the plaintiff has made no serious effort to justify those delays, and their arguments would be unavailing on their merits. Because of these missteps, the plaintiff's motion for leave to amend will be **DENIED** and Sandra Hildenbrand's motion for summary judgment will be **GRANTED**.

I.   **BACKGROUND**

    a.   **Key Facts**

Plaintiff Reiter Consulting Services ("RCS") is a Maryland-based federal government subcontractor that provides information technology services. Compl. ¶ 8, ¶ 15. RCS performed

first-tier subcontracting services to the U.S. Postal Inspection Service through ECS Federal, a prime contractor. *Id.* ¶ 7–8, 15. RCS's subcontract with ECS Federal was a "time and materials-type subcontract," meaning that Reiter was compensated by the hour and cost of materials. *Id.* ¶ 9.

Defendant Sandra Hildenbrand ("Ms. Hildenbrand") is the widow of Jack Dallas Hildenbrand ("Mr. Hildenbrand") and the personal representative of his estate. *Id.* ¶ 3. Mr. Hildenbrand and RCS President Bruce Reiter became friends around 1999. *Id.* ¶ 10. From March 2008 through September 2009, they were partners in a government IT-services contractor business. *Id.* ¶ 11.

In October 2014, RCS retained Mr. Hildenbrand and his company, Defendant Potomac Solutions, as second-tier subcontractors to provide services to the Postal Inspection Services under the aegis of the ECS Federal prime contract. *Id.* ¶ 13. Mr. Hildenbrand's role in supporting the prime contract was providing senior systems engineering and solution architecture services. *Id.* ¶ 15. RCS agreed to pay Mr. Hildenbrand and Potomac Solutions $98 per hour of work. *Id.* ¶ 18.

Between 2014 and 2016, Mr. Hildenbrand's timesheets represented that he worked approximately twelve hours a month, including approximately three hours on weekends. *Id.* ¶ 21. In 2016, the scope of the work required under the contract increased due to government need, and Mr. Hildenbrand accordingly began reporting that he was working forty hours per week under the contract. *Id.* ¶¶ 22–23. During calendar year 2020, for example, Mr. Hildenbrand submitted timesheets representing that he was working full-time, meaning forty hours per week, for RCS and ECS Federal. *Id.* ¶ 25.

At the same time, however, Mr. Hildenbrand was also working for a separate prime contractor, Perspecta Enterprise Solutions ("Perspecta") on its contract with the Postal Inspection Service. *Id.* ¶ 26. Mr. Hildenbrand worked approximately 37.5 hours per week for Perspecta. *Id.*

RCS does not allege that it was unaware of this work, but they allege that they believed Mr. Hildenbrand was working on its second-tier contract "mostly in the evenings, at night, and on weekends" and often worked odd hours on the RCS contract because he was "on call." *Id.* ¶ 27. In December 2020, RCS "was informed," though the Complaint does not identify by whom, that Mr. Hildenbrand "could no longer work on two contracts at once," and RCS consequently removed Mr. Hildenbrand "from working on the ECS Federal contract." *Id.* ¶ 28. In early 2021, the Inspector General of the Postal Service began investigating Mr. Hildenbrand's work on the two contracts. *Id.* ¶ 29.

Mr. Hildenbrand died on October 4, 2021, before the USPS investigation concluded. *Id.* ¶ 30. The investigation ultimately revealed that Mr. Hildenbrand had regularly overstated the number of hours he worked to RCS, ECF Federal, and USPS. *Id.* ¶ 31. He had falsely billed USPS for an average of approximately 16 hours of work per day for June 2016 through December 2020. *Id.* ¶ 32. RCS learned of the investigation's findings from ECS Federal in December 2022. *Id.* ¶ 39. USPS had required ECS Federal to reimburse the government for $913,145 in overbilling, and pursuant to RCS's subcontract, RCS reimbursed ECS Federal for the same. *Id.* ¶¶ 40–41. On January 31, 2023, RCS presented a formal written demand for payment to Ms. Hildenbrand, the personal representative of Mr. Hildenbrand's estate. *Id.* ¶ 43.

### b. Procedural History

After the written demand failed to secure payment, *see id.* ¶ 45, RCS brought this case in September 2023. The Complaint names Sandra Hildenbrand, as personal representative of the estate of Jack Dallas Hildenbrand, and Potomac Solutions, LLC, as defendants, and alleges three counts seeking recovery: fraud (Count I), contribution (Count II), and indemnification (Count III). *Id.* ¶¶ 46–73.

Ms. Hildenbrand, but not Potomac Solutions, filed an answer. *See* Answer, ECF No. 13. The parties then agreed upon a schedule, which the Court ordered, as follows: initial disclosures would be due February 1, 2024; any amendment or joinder would be due March 1, 2024; fact discovery would close November 1, 2024; and dispositive motions would be due December 2, 2024. *See* Scheduling Order at 1, ECF No. 19.

Because Potomac Solutions, LLC had not appeared or answered within the allotted time, RCS requested that the Clerk of Court enter Potomac Solutions' default. *See* ECF Nos. 15. After the Clerk did so, on February 12, 2024, RCS moved for default judgment. *See* ECF No. 24. Ms. Hildenbrand then filed a response, explaining that the Court should defer entry of default judgment because (1) RCS's evidence indicated that Potomac Solutions, LLC was incorporated in October 29, 2021, and therefore came into existence only *after* the events alleged against the company had occurred; (2) Potomac Solutions, LLC's liability, if any, would be coextensive with Mr. Hildenbrand's liability, so such liability should be determined on the merits of RCS's claims against the estate; and (3) RCS had failed to produce (i) its contract with Potomac Solutions, (ii) verification of the claimed damages, or (iii) evidence of the fraudulent timesheets. ECF No. 28 at 4–6. Because the Court harbored "reservations about whether Potomac Solutions, LLC is the correct defendant," among other concerns, it denied the motion for default judgment without prejudice on April 2, 2024. *See* Order of April 2, 2024, at 1, ECF No. 35.

The Court heard little from the parties during the period scheduled for fact discovery. Instead, on the day fact discovery was scheduled to close, the plaintiff moved to extend discovery for an additional ninety days. *See* ECF No. 37. Then, on November 8, 2024, more than eight months after the deadline for amendments, the plaintiff requested leave to file an amended complaint, seeking to join as defendants an additional corporate entity—Potomac Solutions, Inc.—

4

and Ms. Hildenbrand in her individual capacity. *See* ECF No. 38. On November 12, 2024, Ms. Hildenbrand moved for summary judgment on the ground that she lacked capacity to be sued as the personal representative of her husband's estate because RCS had failed to provide evidence that she was, in fact, the personal representative of the estate. *See* ECF No. 41.

## II.   LEGAL STANDARDS

### a.   Leave to Amend

The parties quarrel over the proper standard of review when a plaintiff seeks to amend their complaint after the scheduled deadline for amendments has passed, a subject on which this Court has opined previously. *See Lurie v. Mid-Atl. Permanente Med. Grp.*, 589 F. Supp. 2d 21, 22–23 (D.D.C. 2008). The plaintiffs contend that their motion is governed by Rule 15, while the defendants say that because the agreed-upon deadline for joinder and amendments has passed, Rule 16(a)'s "good cause" standard applies.

When a plaintiff moves to amend their complaint before trial, the motion is governed by Rule 15(a). A plaintiff is free to amend the complaint "once as a matter of course" within 21 days of service of the complaint, or within 21 days of service of an answer or a motion to dismiss, to strike, or for a more definite statement. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2).

But when the plaintiff moves for leave to amend "after a scheduling order deadline has passed, . . . the good cause standard of Rule 16 applies." *Lurie*, 589 F. Supp. 2d at 23; *see* Fed. R. Civ. P. 16(b)(4) (providing that a scheduling order "may be modified only for good cause and with the judge's consent"). "To hold otherwise would allow Rule 16's standards to be 'short circuited' by those of Rule 15 and would allow for parties to disregard scheduling orders," without cause,

"which would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Lurie*, 589 F. Supp. 2d at 23 (quoting *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)). As this Court has previously explained, "litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril." *Id.* (quoting *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004)).

In this case, the parties agreed—and consistent with that agreement, the Court ordered—that amendments and joinder in this case would be due no later than March 1, 2024. *See* Scheduling Order at 1., ECF No. 19. Thus, the Court must analyze the plaintiff's motion under the good-cause standard. That standard focuses on "the reasons the plaintiff has given for his delay instead of the substance of the proposed amendment." *Lurie*, 589 F. Supp. 2d at 23. Only if the plaintiff can show good cause must the court consider whether leave to amend should be granted under Rule 15(a)(2).

### b. Summary Judgment

A party may obtain summary judgment, including partial summary judgment, if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a motion does not implicate any disputed material facts, the availability of summary judgment becomes a "pure question of law." *Dialysis Clinic, Inc. v. Leavitt*, 518 F. Supp. 2d 197, 201 (D.D.C. 2007)).

## III. ANALYSIS

### a. The Motion for Leave to Amend is not supported by good cause.

The plaintiff seeks to amend the complaint to effectuate the addition of two new parties: Potomac Solutions, Inc. (as opposed to Potomac Solutions, LLC) and Ms. Hildenbrand in her personal capacity (as opposed to her putative capacity as representative of her late husband's

6

estate). The plaintiff seeks leave to file these amendments more than eight months after the deadline for amendments or joinder, and it never sought an extension of that deadline, even *nunc pro tunc*, prior to seeking leave to amend. As explained above, the Court therefore must train its focus on "the reasons the plaintiff has given for his delay" in adding each of the would-be defendants. *Lurie*, 589 F. Supp. 2d at 23.

The amendment to join Potomac Solutions Inc. is not supported by good cause. It is apparent from the fruits of RCS's own discovery that, without obtaining discovery from the defendants, RCS possessed documents indicating that that Potomac Solutions, Inc. was implicated in this case. Specifically, in discovery, the plaintiff produced the Form 1099-MISC forms provided by RCS to Mr. Hildenbrand between the years 2016 and 2020. *See* Opp'n Mot. Leave Amend at 19, ECF No. 43; Ex. A to Sur-Reply to Mot. for Default J., ECF No. 34-1 at 4–8. Each income tax filing names Potomac Solutions, Inc. as the recipient of payments from RCS totaling more than $900,000. *See id.* Instead of naming Potomac Solutions, Inc., RCS named a different entity, Potomac Solutions, *LLC*, and public corporate filings of the latter reveal that it had yet to be formed at the time of the alleged fraud. Indeed, the plaintiff concedes in its motion that "some . . . records indicated that Jack Dallas Hildenbrand operated a business known as Potomac Solutions, Inc." ECF No. 38-1 ¶ 15. It thus appears that RCS simply declined to name Potomac Solutions, Inc. as a defendant until it became clear that Potomac Solutions, LLC should not have been named. *Lurie*, 589 F. Supp. 2d at 23. Critically, RCS proceeded to neither abide nor extend the agreed-upon deadline for amendments when its mistake was revealed. That is the opposite of good cause.

RCS also offers a series of explanations for why it had good reason to think Ms. Hildenbrand should be sued a representative, rather than personal, capacity.

"Prior to filing the Complaint, Plaintiff's counsel contacted the probate clerk in McDowell County, North Carolina . . . to determine whether an estate had been opened for [Mr. Hildenbrand] and, if so, the identity of the personal representative." ECF No. 38-1 ¶ 10. "[T]he clerk indicated that there was an 'Estate of Jack Dallas Hildenbrand' and Ms. Hildenbrand was representing the estate." *Id.* ¶ 11. "The clerk also directed Plaintiff's counsel to an online portal to obtain documents related to the 'Estate of Jack Dallas Hildenbrand.'" *Id.* "The portal included documents that showed there was an 'Estate of Jack Dallas Hildenbrand' and that Ms. Hildenbrand was an 'applicant' with regard to the estate." *Id.* The plaintiff also represents that "[b]etween January 2023 and May 2023, Plaintiff's counsel also engaged in various discussions with Ms. Hildenbrand's prior counsel, wherein Ms. Hildenbrand's prior counsel gave the impression, perhaps unintentionally, that Ms. Hildenbrand was the Personal Representative of the Estate of Jack Dallas Hildenbrand." *Id.* ¶ 12.

The factual holes in RCS's theory of liability should have been plain prior to the filing of the Complaint. Conspicuously, the plaintiff does not assert that either the probate clerk or Ms. Hildenbrand's prior counsel specifically stated that she was the personal representative of an estate of Jack Hildenbrand. Even so, Ms. Hildenbrand specifically—and as explained below, properly—put the plaintiff on notice that she was an improper defendant on December 6, 2023, by pleading that she "lack[ed] capacity to be sued as the personal representative of the alleged estate." Answer at 13, ECF No. 13. The defendants then agreed to an amendment deadline of March 1, 2024. The Court hesitates to find good cause in RCS's haste and inattentiveness to the necessary progression of the litigation.

In any event, even if the Court were to find good cause, it would nevertheless deny the amendment as to Ms. Hildenbrand as futile on the ground that the Court lacks personal jurisdiction

over her. A district court "may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss," rendering the amendment futile. *Street v. D.C.*, 962 F. Supp. 2d 117, 120 (D.D.C. 2013) (quoting *In re Interbank Funding Corp. Securities Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010)). In the face of a futility challenge predicated on lack of personal jurisdiction, "the plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The exercise of personal jurisdiction over a nonresident defendant requires the plaintiff to show the defendant has taken "some act by which [it] [has] purposefully avail[ed] itself of the privilege of conducting activities within the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984)). And the contacts must relate to the present lawsuit. *See id.* ("The plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts with the forum.'" (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017))).

No party contends that Ms. Hildenbrand has jurisdictional contacts with the District of Columbia. Instead, the plaintiff's proposed amendment would assert that Sandra Hildenbrand was part of an "implied general partnership" with her deceased husband involving the operations of his consulting business, ECF No. 38-1, at ¶ 34, and that the partnership had case-related jurisdictional contacts with the District of Columbia through its work with the Postal Service, *see* ECF No. 44 at 18-19. The Court doubts that the alleged facts would support finding an implied partnership under Virginia law. But assuming the alleged partnership existed as a matter of law, the jurisdictional contacts of a partnership cannot be imputed to individual partners. Although the D.C. Circuit has never weighed in on the question, other sessions of this Court have observed that

although "jurisdiction over the partnership follows from the partner's contacts," the reverse may not be so: "personal jurisdiction over the members of a partnership must be based on the individual actions of each partner." *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 33–34 (D.D.C. 2013) (first citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002), and then citing *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 267 n.16 (D.D.C. 2011)). So, the absence of alleged contacts between Ms. Hildenbrand and the District of Columbia precludes the exercise of personal jurisdiction over her irrespective of whether an actual or implied partnership relationship existed. Consequently, even if the Court could discern any good cause for RCS's disregard of the Court's scheduling order in the belated filing of the amendment, the amendment would be futile.

### b. Motion for Summary Judgment

Ms. Hildenbrand, in her putative capacity as the administratrix of the Estate of Jack Dallas Hildenbrand, also moves for summary judgment on the sole, and briefly stated, ground that she "is not and has never been the Personal Representative" of such estate. ECF No. 41 at 2. As noted above, RCS does not dispute this fact but, instead, contends that Hildenbrand is not entitled to judgment as a matter of law. Specifically, RCS contends that Hildenbrand did not properly raise her affirmative defense when she answered the Complaint, as required by Federal Rule of Civil Procedure 9(a). ECF No. 45 at 2–3.

At the outset, the Court cannot overlook the fact that RCS's opposition, which was filed more than a week after the deadline set by this Court's local rules. Because Ms. Hildenbrand's motion was filed on November 12, 2024, RCS's opposition was due November 26, 2024. *See* D.C. LCvR 7(b) ("Within 14 days of the date of service . . . an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion."). RCS, however, only filed its opposition on December 2, 2024, without so much as an acknowledgement of its tardiness, let

10

alone an explanation. Under the rules of this Court, RCS's failure to respond "within the prescribed time" permits the Court to treat Ms. Hildenbrand's "motion as conceded." *Id.* And given that RCS's summary judgment opposition reflects a repeated disregard for this Court's deadlines, the Court is disinclined to overlook the delay.

The delay ultimately matters little, because the substance of RCS's opposition is also without merit. Rule 9 governs the pleading of special matters, including certain affirmative defenses. As relevant here, Rule 9(a) provides that when a defendant seeks to raise a lack of "capacity to . . . be sued" or "authority to . . . be sued in a representative capacity," the party "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a). "The requirement of a specific denial," however, "is not especially onerous," and "[a]bsent special knowledge on the part of the pleader, a specific denial unaccompanied by supporting facts should suffice." 5A Arthur R. Miller, Charles A. Wright & A. Benjamin Spencer, Federal Practice & Procedure § 1294 (4th ed. 2025).

There is no question that Ms. Hildenbrand specifically pled that she "lacks capacity to be sued as the personal representative of the alleged estate." Answer at 13 ¶ 7, ECF No. 8. The question therefore is whether Rule 9(a) required more. RCS contends that when filing her answer, Ms. Hildenbrand withheld the fact, later disclosed in an affidavit during discovery, that she "never attempted to qualify as personal representative of [her husband's] estate because to the best of [her] knowledge, [he] possessed only a small estate, for which probate was unnecessary." ECF No. 45 at 3 (quoting ECF No. 45-1 ¶ 5). Yet the *reasons* why she did not attempt to probate the estate are orthogonal to the *undisputed* fact that she was not, and is not, the personal representative of the estate. To the extent that RCS suggests that Ms. Hildenbrand withheld the fact that no estate existed, that fact was not "peculiarly within [her] knowledge." *See Shatsky v. Palestine Liberation*

*Org.*, No. 02-cv-2280-RJL, 2017 WL 2666111, at *11 (D.D.C. June 20, 2017) *vacated and remanded on other grounds* 955 F.3d 1016 (D.C. Cir. 2020). Rather, that information was available as a matter of public record. In any event, the only legal authority the plaintiff cites is the ruling of another session of this Court in *Council of Co-Owners of Calvert Park Condo. v. Howell*, No. 24-cv-00594-RC, 2024 WL 3566124 (D.D.C. July 29, 2024). That case is entirely inapposite because, unlike here, the defendant had never "raise[d] the . . . lack of capacity to sue in an answer or a motion to dismiss" at all, so the argument was deemed forfeited. *Id.* at *5.

## IV. CONCLUSION

Based on the foregoing, the Court will **DENY** the plaintiff's Motion for Leave to Amend and **GRANT** Sandra Hildenbrand's Motion for Summary Judgment. A separate order consistent with this opinion will issue.

Date: 9-24-25

Royce C. Lamberth
United State District Judge